UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Joshua Flores, *et al.*,

      Plaintiffs,

v.                                                                Case No. 20-10972

FCA US LLC,                                              Sean F. Cox
                                                                     United States District Court Judge

      Defendant.

_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION TO DISMISS

This putative class action brought against Defendant FCA US LLC ("Defendant" or

"FCA") is currently before the Court on a Motion to Dismiss Plaintiffs' twelve-count First

Amended Class Action Complaint, brought under Fed. R. Civ. P. 12(b)(6).  This motion has been

fully briefed by the parties and the Court heard oral argument on December 3, 2020.  For the

reasons set forth below, the Court shall grant the motion in part and deny it in part.  The Court

shall grant the motion to the extent that it shall dismiss: 1) the Breach of Express Warranty

claims asserted in Count I; 2) the Breach of Implied Warranty claim of Plaintiff Henderson

asserted in Count II; 3) all of the Unjust Enrichment claims asserted in Count III, with the

exception of the claim asserted by Plaintiff Stirrat under South Carolina law; and 4) the

consumer protection act claims asserted in Counts IV, V, and VII through XII.  The Court shall

also dismiss the the nationwide class allegations asserted in the FAC and rules that Plaintiffs

cannot maintain a class action as to the consumer protection violations in Counts VIII and XII.

The motion shall be denied in all other respects.  Accordingly, the following claims remain in

1

this putative class action: 1) the Breach of Implied Warranty claims of Plaintiffs Flores,

Klimushkin, Oliver, Gravense, Krohn, and Stirrat asserted in Count II; 2) the unjust enrichment

claim of Plaintiff Stirrat asserted in Count III, and 3) the Breach of Implied Warranty Claim

under the Song-Beverly Act, asserted by Plaintiff Flores in Count VI.

## BACKGROUND

Seven named Plaintiffs filed this putative class action against Defendant FCA on April

20, 2020.

On June 8, 2020, Defendant filed a Motion to Dismiss.  Thereafter, this Court issued its

standard order, advising Plaintiffs that they could either file a response to the motion or file an

amended complaint, in order to remedy any pleading deficiencies.

Plaintiffs then filed a First Amended Class Action Complaint ("FAC") on July 10, 2020.

(ECF No. 16).  The FAC includes the following introduction:

1.      This is a putative class action against FCA US, LLC ("FCA" or "Fiat
        Chrysler Automobiles") on behalf of individuals who purchased or leased
        any of the following vehicles sold with an electronic sway bar disconnect
        (hereinafter, the "Class Vehicles"):

        • 2010-2017 Jeep Wrangler Rubicon ("JK")

        • 2010-2017 Jeep Wrangler Unlimited Rubicon ("JKU")

        • 2018-2020 Jeep Wrangler Rubicon ("JL")

        • 2018-2020 Jeep Wrangler Unlimited Rubicon ("JLU")

        • 2020 Jeep Gladiator Rubicon

        • 2010 Dodge Ram 2500 Power Wagon

        • 2011-2020 Ram 2500 Power Wagon

2.      As described in greater detail below, a sway bar (also called an "anti-roll

bar" or "stabilizer bar") is part of a car's suspension system.  It provides stability and helps prevent the car from leaning to one side when turning. Driving on streets or highways with a disconnected or malfunctioning sway bar is dangerous.

3.      For cars that are suitable for off-roading, like the Class Vehicles here, it is sometimes advantageous to temporarily disconnect the sway bar when driving in rough terrain.  The Class Vehicles' suspension systems include an electronic sway bar disconnect, which is intended to allow the driver to quickly disconnect and reconnect the sway bar with the push of a button on the dashboard.

4.      The problem, however, is that the electronic sway bar disconnect has a dangerous defect, and thus poses a serious safety risk to drivers, occupants, and the general public (hereinafter, "the Sway Bar Defect"). Specifically, the electronic circuit board for the sway bar disconnect is in a housing with seals that are prone to failure and is located in an area that is likely to get wet or sprayed under ordinary or expected conditions, such as driving over puddles or in the rain.  Failure of the circuit board occurs when liquid or contaminants breach a seal of the housing, resulting in a disconnected or malfunctioning sway bar.  In some instances, the electronic sway bar disconnect will fail and not reconnect, forcing the driver to drive on roads and highways without a sway-bar.  Driving on streets and highways with a disconnected or malfunctioning sway bar is dangerous.

5.      FCA has known about this problem for years but has taken no action to fix it.  Instead, FCA continues to sell the Class Vehicles as safe, reliable and fit for their ordinary purpose.  Even worse, FCA also denies warranty coverage for the Sway Bar Defect.  As a result, owners of the Class Vehicles have suffered damages, including, inter alia: (1) out-of-pocket expenses to repair or replace defective electronic sway bar disconnects; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; and/or (4) diminished value of their vehicles.

(*Id*. at 2-4).

**The Named Plaintiffs**

The FAC includes seven named Plaintiffs.  The named Plaintiffs reside in California, Michigan, New Jersey, New York, and Texas.  They purchased their vehicles in California, Nevada, Kentucky, Virginia, New York, and South Carolina.

3

Plaintiff Jason Flores is a citizen of California and owns a 2018 Ram Power Wagon, "which he purchased for his personal or household use in April 2018 from an authorized Ram dealer, Hoblit Dodge, in Woodland, California.  Prior to his purchase, Mr. Flores reviewed and relied on the window sticker.  He also spoke with a sales representative about the Class Vehicle he purchased.  None of the sources of information Mr. Flores reviewed disclosed the Sway Bar Defect.  If there had been such a disclosure, Mr. Flores would not have bought his Class Vehicle, or would have paid less for it."  (FAC at ¶ 9).  "After his purchase, and within the warranty period, Mr. Flores experienced the Sway Bar Defect where the sway bar would not engage and the electronic sensors stopped functioning.  Mr. Flores brought his car to the dealer for repair, but after the attempted repairs, Mr. Flores had to bring the car back several times because the Sway Bar Defect continued to manifest."  (FAC at ¶ 10).

Plaintiff Alexander Klimushkin is a citizen of California and "owns a 2018 Jeep Wrangler Unlimited Rubicon, which he purchased new for his personal or household use in January 2019 from Chapman Chrysler Jeep in Henderson, Nevada.  Prior to his purchase, Mr. Klimushkin viewed and relied on the window sticker, which did not disclose the Sway Bar Defect.  If there had been such a disclosure, Mr. Klimushkin would not have bought his Class Vehicle, or would have paid less for it.  Mr. Klimushkin has experienced the Sway Bar Defect, where the sway bar would not connect or disconnect on demand as advertised.   The defect manifested within the warranty period, and although he reported the problem to the dealer, it has not been fixed."  (FAC at ¶ 11).

Plaintiff Jason Henderson is a citizen of Michigan and "owns a 2013 Jeep Rubicon, which he purchased for his personal or household use in 2013 from an authorized Jeep dealer,

Cross Jeep in Louisville, Kentucky.  Prior to his purchase, Mr. Henderson reviewed and relied

on the window sticker.  He also reviewed information on Jeep.com and spoke with a sales

representative about the Class Vehicle he purchased.  None of the sources of information Mr.

Henderson reviewed disclosed the Sway Bar Defect.  If there had been such a disclosure, Mr.

Henderson would not have bought his Class Vehicle, or would have paid less for it."  (FAC at ¶

12).  "After his purchase, Mr. Henderson experienced a problem where the sway bar would not

disconnect.  Later, the Sway Bar Defect again manifested while Mr. Henderson was driving in a

remote area of the Upper Peninsula of Michigan, which required him to tow the vehicle to his

authorized Jeep dealer.  Jeep attempted to fix the problem, but the Sway Bar Defect manifested

almost immediately after the attempted repair.  Mr. Henderson brought the vehicle in a second

time to Jeep, but rather than address the problem, Jeep only disabled the electronic sway bar

disconnect as a band-aid measure, and told Mr. Henderson that he would be required to pay

$1,500 to replace the system."  (FAC at ¶ 13).

Plaintiff Patrick Gravenese is a citizen of New Jersey and "owns a 2013 Ram Power

Wagon, which he purchased for his personal or household use in 2015 from Wholesale Outlet

Automotive Group.  Mr. Gravenese has experienced the Sway Bar Defect numerous times.  Mr.

Gravenese complained about the problem to an authorized Jeep dealer in Millville, New Jersey,

but the dealer would not fix the problem under warranty."  (FAC at ¶ 14).

Plaintiff Mark Krohn is a citizen of New York and "owns a 2015 Wrangler Unlimited

Rubicon, which he purchased for his personal or household use in July 2015 from Koons Dodge

Jeep in Vienna, Virginia.  Mr. Krohn had his vehicle custom built, and prior to his purchase, he

reviewed a build sheet showing options being ordered.  Prior to his purchase, Mr. Krohn also

viewed and relied on window stickers on similar Jeeps. Neither the build sheet or the window stickers on similar Jeeps disclosed the Sway Bar Defect.  If there had been such a disclosure, Mr. Krohn would not have bought his Class Vehicle, or would have paid less for it.  Mr. Krohn experienced the Sway Bar Defect in 2019, while his Class Vehicle was still under an extended warranty, but he was still required to pay money for the repair."  (FAC at ¶ 15).

Plaintiff Robert Oliver is a citizen of New York and "owns a 2018 Ram Power Wagon, which he purchased for his personal or household use in December 2019 in Watertown, New York.  Prior to his purchase, Mr. Oliver reviewed and relied on the window sticker.  He also spoke with a sales representative about the Class Vehicle he purchased.  None of the sources of information Mr. Oliver reviewed disclosed the Sway Bar Defect.  If there had been such a disclosure, Mr. Oliver would not have bought his Class Vehicle, or would have paid less for it.  Shortly after his purchase, and while the Class Vehicle was still under warranty, Mr. Oliver experienced the Sway Bar Defect."  (FAC at ¶  16).

Plaintiff Richard L. Stirrat is a citizen of Texas and "owns a 2017 Jeep Wrangler Rubicon, which he purchased for his personal or household use in October 2017 in Columbia, South Carolina.  Prior to his purchase, Mr. Stirrat reviewed and relied on the window sticker.  He also spoke with a sales representative about the Class Vehicle he purchased.  None of the sources of information Mr. Stirrat reviewed disclosed the Sway Bar Defect.  If there had been such a disclosure, Mr. Stirrat would not have bought his Class Vehicle, or would have paid less for it.  Mr. Stirrat experienced the Sway Bar Defect in 2020.  Mr. Stirrat brought his Class Vehicle in for repair while the car was still under warranty, but he was denied warranty coverage."  (FAC at ¶ 17).

**The Class Allegations**

The FAC asks the Court to certify this as a class action with the following classes and subclasses:

> All persons in the United States who purchased, leased, or own a Class Vehicle (the "Nationwide Class" or "Class");
>
> All persons in California who purchased, leased, or own a Class Vehicle (the "California Subclass");
>
> All persons in Michigan who purchased, leased, or own a Class Vehicle (the "Michigan Subclass");
>
> All persons in Nevada who purchased, leased, or own a Class Vehicle (the "Nevada Subclass");
>
> All persons in New Jersey who purchased, leased, or own a Class Vehicle (the "New Jersey Subclass").
>
> All persons in New York who purchased, leased, or own a Class Vehicle (the "New York Subclass");
>
> All persons in South Carolina who purchased, leased, or own a Class Vehicle (the "South Carolina Subclass");
>
> All persons in Virginia who purchased, leased, or own a Class Vehicle (the "Virginia Subclass")"

(FAC at ¶ 78).  It also states that "[s]ubject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by an amended complaint, or narrowed at class certification, including through the use of multi-state subclasses."  (FAC at ¶ 79).

**The Claims**

The FAC includes the following twelve counts:  1) Breach of Express Warranty (Count

7

I); 2) Breach of Implied Warranty (Count II); 3) Unjust Enrichment (Count III); 4) "Violation of

California's Consumer Legal Remedies Act, California Civil Code § 1750 *et seq*. ("CLRA")

(Count IV); 5) "Violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §

17200 *et. seq*. (Count V); 6) "Breach of Implied Warranty Under the Song-Beverly Act, Cal.

Civ. Code § 1790 *et seq*." (Count VI); 7) "Violation of the New Jersey Consumer Fraud Act

('NJCFA')" (Count VII); 8) "Violation of the Virginia Consumer Protection Act (VA. Code

Ann. § 59.1-196 *et seq*.)" (Count VIII); 9) "Violation of the Nevada Deceptive Trade Practices

Act (Nev. Rev. Stat. § 598.0903 *et seq*.)" (Count IX); 10) "Deceptive Acts or Practices, New

York GBL § 349" (Count X); 11) "(False Advertising, New York Gen. Bus. Law § 350)" (Count

XI); and 12) "South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*.)"

(Count XII).

**The Pending Motion To Dismiss**

Defendant now moves to dismiss the FAC, pursuant to Fed. R. Civ. 12(b)(6).  This

motion has been fully briefed.

Attached to Defendant's Motion to Dismiss are six warranty information booklets: 1)

2013 Jeep Warranty Information Booklet (ECF No. 17-2); 2) 2013 Ram Warranty Information

Booklet (ECF No. 17-3); 3) 2015 Jeep Warranty Information Booklet (ECF No. 17-4); 4) 2017

Jeep Warranty Information Booklet (ECF No. 17-5); 5) 2018 Jeep Warranty Information Booklet

(ECF No. 17-6); and 6) 2018 Ram Warranty Information Booklet (ECF No. 17-7).

When sold new, the Plaintiffs' vehicles were covered by a 3-year/36,000 mile Basic

Limited Warranty, which was materially identical among the Class Vehicles.  (FAC at ¶¶ 65-67;

ECF Nos. 17-2 through 17-7).

The Basic Limited Warranty provided to Plaintiffs states: "The warranties contained in this booklet are the *only express warranties* that FCA US LLC (FCA US) makes for your vehicle." (ECF No. 17-5 at PageID.582) (emphasis added); s*ee also* ECF No. 17-3 at PageID.494; ECF No. 17-2 at PageID.453 ECF No. 17-4 at PageID.537; ECF No. 17-6 at PageID.619; ECF No. 17-7 at PageID.656).

The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation, excluding tires. (FAC at ¶¶ 65-67; ECF Nos. 17-2 through 17-7). The Basic Limited Warranty begins the date the owner takes delivery of the vehicle or when the vehicle is first put into service. (*Id.*).

## STANDARD OF DECISION

Defendant's Motion to Dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ANALYSIS

### I.    Challenges To The Warranty Claims (Counts I, II, and VI)

Defendant's motion begins by challenging the warranty claims asserted in Counts I, II, and VI of the FAC.

#### A.    Express Warranty Claims (Count I)

The FAC acknowledges that Plaintiffs were provided with a written, express warranty. The Basic Limited Warranty provided to Plaintiffs states: "The warranties contained in this booklet are the *only express warranties* that FCA US LLC (FCA US) makes for your vehicle." (ECF No. 17-5 at PageID.582) (emphasis added).  The express warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation, excluding tires.  (FAC at ¶¶ 65-67; ECF Nos. 17-2 through 17-7).  The Basic Limited Warranty begins the date the owner takes delivery of the vehicle or when the vehicle is first put into service.  (*Id.*).

Count I of the FAC asserts a claim for "Breach of Express Warranty."  Plaintiffs allege that Defendant "promised, warranted, and/or advertised that the Class Vehicles have the capability to safely manage in up to 30 inches of water.  These warranties, as well as

10

advertisements, brochures, and other statements in the media regarding the Class Vehicles

formed a basis of the bargain that was reached when Plaintiffs and Class members purchased or

leased their Class Vehicles." (FAC at ¶ 92).  In this count, Plaintiffs further allege:

93. Plaintiffs and Class members experienced the existence of the Sway Bar Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by FCA.  Despite the existence of the warranties, FCA failed to inform Plaintiffs and Class members that the Class Vehicles contained the Sway Bar Defect.

94. Plaintiffs and Class members could not have reasonably discovered the Sway Bar Defect prior to failure.  Due to the fact that the parts affected by the Sway Bar Defect are internal, mechanical components, and the failure manifests suddenly and without warning, Plaintiffs and Class members have no warning that the Sway Bar Defect has manifested until it causes the electronic sway bar disconnect to fail.

95. Because of the Sway Bar Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of the Class Vehicles to perform the function of safe and reliable transportation, especially in wet road conditions.

96. FCA breached its express warranties by selling and leasing Class Vehicles that were defective with respect to materials, workmanship or factory preparation.  In other words, even though the vehicles are warranted to be able to drive through water that partially, if not fully, submerges the sway bar actuator housing, the housings still fail in conditions much less extreme, such as those found on normal wet roads after a rainstorm.

97. FCA further breached its express warranties by refusing to repair or replace the faulty electronic sway bar disconnect when presented by class members.  In connection with the purchase or lease of each of the Class Vehicles, FCA provided warranty coverage for the Class Vehicles, as alleged above.  Under the warranties provided to Plaintiffs and Class members, FCA promised to repair or replace covered defective components arising out of defects in materials, workmanship or factory preparation, excluding tires, at no cost to owners and lessors of the Class Vehicles.

98. Plaintiffs and other Class Members have experienced the Sway Bar Defect and sought repair or replacement during the operative term of their warranty coverage.  However, when Plaintiffs and other Class Members

presented their Class Vehicles for repair, FCA refused to honor the Basic
warranty.

99.    Even when FCA does repair the Sway Bar Defect under the Basic
warranty, the repair is ineffective.  That is because FCA's practice of
replacing faulty electronic sway bar disconnect components with equally
defective replacement parts leaves the electronic sway bar disconnect
susceptible to repeated failure and thus does not effectively remedy the
Sway Bar Defect.

100.   The limited warranty promising to repair and/or correct a manufacturing
defect fails in its essential purpose because the remedy is insufficient to
make Plaintiffs and Class members whole because, on information and
belief, FCA has failed and/or have refused to adequately provide the
promised remedies within a reasonable time.

101.   Because of FCA's breach of express warranty as set forth herein, Plaintiffs
and Class members assert, as additional and/or alternative remedies, the
revocation of acceptance of the goods and the return to Plaintiffs and
Class members of the purchase or lease price of all Class Vehicles
currently owned or leased, and for such other incidental and consequential
damages as allowed.

102.   As a direct and proximate result of FCA's breach of express warranties,
Plaintiffs and Class members have been damaged in an amount to be
determined at trial.

(FAC at ¶¶ 92-102).

As a preliminary matter, Defendant contends that the "laws of the states where Plaintiffs

purchased their vehicles govern their warranty claims.  *See, e.g., Schultz v. Tecumseh Prods*.,

310 F.2d 426, 428 (6th Cir. 1962)."  (Def.'s Br. at 9).  Plaintiffs offer no authority or argument to

the contrary.  Rather, they simply assert it is "premature to make any such determination" at this

time without further addressing the issue.  (*See* Pls.' Br. at 3 n.1).  As such, the Court shall

consider the laws of the states where the named Plaintiffs purchased their respective vehicles

when considering the challenges to the express warranty count.  *Schultz, supra*; *see also*

*Danielkiewicz v. Whirlpool Corp*., 426 F. Supp.3d 426, 431 (E.D. Mich. 2019); *Schechner v.*

12

*Whirlpool Corp.*, 237 F. Supp.3d 601, 609 (E.D. Mich. 2017).

Defendant's motion asserts that Plaintiffs' claims for breach of express warranty are subject to dismissal for several reasons.

### 1.    Express Warranty Limitation

While not raised as a separate argument in Defendant's opening brief, after Plaintiffs' response brief indicated that Plaintiffs assert that they are asserting express warranty claims based upon statements made in advertising and marketing materials (Pls.' Br. at 1-3), Defendant emphasizes that the express warranties given to Plaintiffs have an express limitation.  (Def.'s Reply at 1).  The warranty booklets provided to Plaintiffs expressly state that the warranties made in the booklets are the only express warranties that Defendant makes for the vehicle. Defendant asserts that Plaintiffs "completely ignore this enforceable warranty limitation when they try to save their express warranty claims by pointing to allegations of statements in advertising, marketing materials, user manuals, and interior door stickers."  (*Id*. at 1-2). Defendant directs the Court to *Sater v. Chrysler Grp. LLC*, 2015 WL 736273 *5 (C.D. Cal. 2015) (statements on website could not be basis for express warranty claim where limitation in written warranty made clear that only warranties were within booklet).

The way this argument developed, Plaintiffs lacked the opportunity to respond to it.  As a result, this Court ordered the parties to file supplemental briefs on this issue and they have done so.

Having reviewed those supplemental briefs, this Court concludes that, under the laws of the states where Plaintiffs purchased their vehicles,  Plaintiffs cannot assert express warranty claims based on statements made in advertising or marketing materials that are not included in

written warranty booklets. *See, eg.*, *Colgate v. Juul Labs, Inc.*, 402 F. Supp. 728, 756 (N.D. Cal. 2009) (Finding that the defendant's "limited warranty, which expressly disclaims any other express warranty," precludes plaintiffs' express warranty claim); *Riegel v. Medtronic, Inc*., 2003 WL 25556778 at *1-3 (N.D. N.Y. 2003) (dismissing express warranty claim where disclaimer of other warranties in product's instruction booklet was made in "clear, conspicuous and specific language" and was therefore "sufficient to disclaim any express warranties."); *Sater v. Chrysler Grp. LLC*, 2015 WL 736273 at * 5 (C.D. Cal. 2015); *Lake v. Ford Motor Co.,* 2019 WL 5873887 at *5 (E.D. N.Y. 2019); *Philips v. South Carolina State Univ.,* 2005 WL 7084045 (S.C. App. 2005); *Gooch v. E.I. DuPont de Nemours & Co.*, 40 F. Supp.2d 863, 868-69 (W.D. Ky. 1999); *Berman v. ADT LLC*, 2013 WL 6916891 at *3-4 (D. N.J. 2013); *Sierra Creek Ranch, Inc. v. J.I. Case*, 634 P.2d 458, 460 (Nev. 1981); *Brosville Cmty. Fire Dept., Inc. v. Navistar, Inc*., 2014 WL 7180791 at * 4-5 (W.D. Va. 2014).

> **2.     Plaintiffs Have Pleaded A Design Defect That Is Not Covered By The Express Warranties At Issue.**

Defendant also asserts that because Plaintiffs have pleaded a design defect that is not covered by the express warranties at issue, the express warranty claims asserted in Count I should be dismissed.  Defendant begins by noting that "the 3-year/36,000 mile Basic Limited Warranty at issue only covers defects in 'material, workmanship or factory preparation.' *See*, FAC, ¶ 66; *see also supra*, p. 6."  (Def.'s Br. at 9).  Defendant asserts that "courts uniformly agree that such warranties do not cover design defects" and direct the Court to numerous cases in support of that proposition, including *Matanky v. Gen. Motors LLC*, 370 F.Supp.3d 772 (E.D. Mich. 2019).

In asserting that what Plaintiffs have pleaded in the FAC is a design defect, Defendant

argues:

> The express warranty claims here must be dismissed because the FAC
> makes it abundantly clear that an alleged design defect is at issue.  Indeed, in
> describing the alleged defect, Plaintiffs repeatedly refer to "design."  *See, e.g.*,
> FAC, ¶ 32 ("The design of the electronic sway bar disconnect is stunningly bad"
> (emphasis added)); *id.* at ¶ 49 ("The design ... is so obviously ill-conceived ..."
> (emphasis added)); *id.* at ¶ 68 ("defect in design" (emphasis added)).   And,
> they explicitly attribute the cause of the alleged defect to various design
> decisions – i.e., the "placement" of the actuator housing at a "low" point where it
> is "likely to get wet," the use of an actuator housing that is "not properly
> sealed," and the inclusion of only "limited electrical insulation" in the circuit
> board.  *See, e.g., id.* at ¶¶ 4, 32, 47, 68.
>
> Furthermore, Plaintiffs specifically plead that the alleged defect
> "uniformly" exists in every one of hundreds of thousands of Class Vehicles sold
> over the course of more than a decade.  *See, e.g., id.* at ¶¶ 1, 32, 47.  As numerous
> courts have noted, this is the hallmark of a design, not manufacturing, defect.
> Because Plaintiffs have pleaded a design defect that is not covered by the
> warranties at issue, their express warranty claims in Count I must be dismissed.

(Def.'s Br. at 10).

In response to this argument, Plaintiffs assert that they have alleged both a design defect

and a defect in materials, workmanship and factory preparation.  They argue:

> Plaintiffs allege that the "location, housing and placement of the electronic sway
> bar disconnect cause or contribute to the Sway Bar Defect and constitute a defect
> in design, materials, workmanship and factory preparation.  FCA's failure to
> assemble and manufacture the electronic sway bar disconnect in such a way as to
> prevent manifestation of the Sway Bar Defect is a defect in materials,
> workmanship, factory preparation, as well as design."  FAC ¶ 68.  That is
> sufficient at this stage because, "without the benefit of any factual development as
> to the cause and origin of the alleged defect, dismissal of the express warranty
> claims is not justified by a premature and uninformed classification of the alleged
> defect as being categorically in the realm of 'design' or 'manufacturing.'"  *In re
> FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1011 (E.D.
> Mich. 2017).

(Pls.' Br. at 4).

As to this challenge to Plaintiffs' express warranty claim, the Court finds that

15

Defendant's argument has merit and should be addressed at this juncture.[1]

In *Matanky*, the district court dismissed a breach of express warranty claim where the alleged defect was a design defect because such defects are not covered by an express warranty that covers only defects in "materials or workmanship."  In doing so, the district court cited several cases recognizing the legal support for this argument: "*See Schechner v. Whirlpool Corp.*, 237 F.Supp.3d 601, 613 (E.D. Mich. 2017) ('A MMWA claim fails as a matter of law if it alleges a design defect, but is brought under an express written warranty covering materials and workmanship." (internal quotation marks and citations omitted)): *Sloan v. Gen. Motors*, LLC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) ("[T]he overwhelming weight of state law authority hold that design defects are not covered under similar warranties.")."  *Matanky, supra*, at 788.

Plaintiffs disagree with the proposition that an express warranty that only covers defects in "material, workmanship or factory preparation" does not cover design defects – but offer no legal authority to support their position.  (*See* Pls.' Br. at 3).

In *McKee v. Gen. Motors LLC,* 376 F. Supp.3d 751 (E.D. Mich. 2019)*,* the district court explained that there are two types of defects:

> There are two types of defects: manufacturing and design. A manufacturing defect exists "when an item is produced in a substandard condition" and the defect manifests when the item "perform[s] differently from other ostensibly identical units of the same product line." *Davidson v. Apple, Inc*., No. 16-CV-04942-LHK, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017) (quoting *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120, 123 Cal.Rptr.2d

---

[1]The Court notes that this type of challenge has been found to be prematurely raised in the context of a motion to dismiss in some cases. *See, eg., In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F Supp.3d at 1011.  Given the allegations in the FAC, however, the Court concludes it is appropriately addressed at this juncture.

303 (2002)); *see also Nelson v. Nissan N. Am., Inc*., No. 11-5712 (JEI/AMD), 2014 WL 7331075, at *2 (D.N.J. Dec. 19, 2014) (A manufacturing defect occurs "when a product comes off the assembly line in a substandard condition."). Thus, manufacturing defects can be understood as "defects in 'material or workmanship.' " ECF 23, PgID 403.

A design defect "exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Davidson,* 2017 WL 976048, at *11 (quoting *McCabe,* 100 Cal. App. 4th at 1120, 123 Cal.Rptr.2d 303). Design defects, therefore, exist in every product possessing the faulty design.

*McKee*, 376 F.Supp.3d at 756.

Here, Defendant persuasively argues that what Plaintiffs have alleged in the FAC is a design defect. (*See* Def.'s Br. at 10). While the FAC makes references to defects in materials and workmanship, this Court fails to see any well -pleaded supporting factual allegations that would support a claim of defects in materials or workmanship. Thus, the Court shall dismiss the express warranty count on this basis. *Matanky, supra, Sloan, supra; Schechner, supra; see also Troup v. Toyota Motor Corp*., 545 F. App'x 668 (9th Cir. 2013) (Plaintiff failed to adequately allege a materials or workmanship defect. Despite its scattered references to 'materials,' the gravaman of the complaint that the Prius's defect resulted from the use of resin to construct the gas tanks, which is a design decision."); *Coba v. Ford Motor Co.*, 2016 WL 5746361 at *9 (D. N.J. 2016); *Robinson v. Kia Motors, Am., Inc*., 2015 WL 5334739, *12 (D. N.J 2015). Accordingly, the Court shall dismiss Count I of the FAC.[2]

### B.    Implied Warranty Claims (Counts II & VI)

---

[2]Given these rulings the Court need not consider Defendant's additional challenges to the express warranty count.

Plaintiffs assert claims for breach of implied warranty under the UCC in Count II and Flores asserts a similar claim in Count VI under California's Song-Berverly Act.  Defendant's motion challenges these two counts, asserting that the facts pleaded in the FAC "do not support the notion that Plaintiffs' vehicles were 'unmerchantable.'" (Def.'s Br. at 13). In support of this argument, Defendant asserts that a claim for breach of implied warranty is only viable if Plaintiffs' vehicles did not possess even the most basic degree of fitness for ordinary use. Defendant contends that, for a motor vehicle, a breach occurs only when a defect renders the vehicle unfit for its ordinary purposes of providing transportation to its owner.

In response, Plaintiffs assert that this argument should be rejected for the same reason that Judge Roberts rejected it in *Matanksky*.  The Court agrees.

In *Matanky*, the defendant manufacturer asked the district court to dismiss implied warranty claims because the plaintiffs failed to allege "their cars were not fit for the ordinary purposes of providing transportation."  *Matanksky, supra*, at 785.  The district court rejected that argument, concluding that the defendant had construed "unmerchantability too narrowly" and explained:

> To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." *See* U.C.C. § 2-314(2)(c). Contrary to GM's argument, cars are not merchantable merely because they are able to provide transportation. Rather, to be fit for its ordinary purpose, a standard road vehicle must be able to provide safe and reliable transportation and be substantially free of defects. *See In re MyFord Touch Consumer Litig.*, 291 F.Supp.3d 936, 945-46 (N.D. Cal. 2018) (citations omitted) (safety, reliability, operability, and substantial freedom from defects are independent grounds for demonstrating unmerchantability); *see also Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013) (to state a viable claim for breach of the implied warranty of merchantability, a plaintiff must allege that the defect rendered a car "unfit for its intended purpose [by]

compromis[ing] the vehicle's safety, render[ing] it inoperable, or drastically reduc[ing] its mileage range").

Where, as here, GM marketed the Z06 not just as an ordinary car to be used on public roads, but also as a car to be used on race tracks, the ordinary purpose of the car is not limited to providing safe and reliable transportation on a public road; rather, the car must also be safe and reliable on a race track while remaining substantially free of defects. *See* *786 *MyFord Touch*, 291 F.Supp.3d at 945-46; *Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at *9 (S.D. Fla. July 12, 2018) ("Here, the gravamen of the allegations in the Second Amended Complaint is that Ford falsely marketed Plaintiffs' vehicles as Track-Ready and knew about the alleged Limp Mode defect, despite continuing to promote that [sic] vehicles as capable of being used or raced on a racetrack. Thus, the question is whether this class of vehicles was 'fit for the ordinary purpose' of [use] on a racetrack, as advertised by Ford.").

Plaintiffs allege that their cars contain a design defect that persistently causes their cars to overheat and go into Limp Mode when used on a track. Some Plaintiffs also allege that their cars have overheated, lost engine power, and/or gone into Limp Mode on public roadways during a variety of conditions. Plaintiffs allege that by causing their cars to overheat, lose engine power, and substantially decrease speed unexpectedly, the defect significantly undermines the reliability of the Z06 and raises serious safety concerns as to its suitability for use on public roads and race tracks. Plaintiffs adequately plead that the Z06s powertrain defect seriously impairs the safety, reliability, and operability of their cars.

Accepting as true Plaintiffs' allegations, the Court finds that Plaintiffs plausibly allege their cars are not fit for the ordinary purpose of providing safe and reliable transportation on public roads and safe and reliable use on race tracks. *See Tershakovec*, 2018 WL 3405245, at *9; *MyFord Touch,* 291 F.Supp.3d at 947-49. *See also Borkman v. BMW of N. Am., LLC*, 2017 WL 4082420, at *9 (C.D. Cal. Aug. 28, 2017) (finding plaintiff adequately pled an implied warranty claim by alleging the defect "creates hazardous conditions, including loss of power during operation, engine overheating, and potentially, engine failure").

*Matanksky, supra*, at 785-86.

Accepting Plaintiffs' allegations in the FAC as true, they plausibly allege that their vehicles are not fit for the ordinary purpose of providing safe and reliable transportation on

19

public roads and are not suitable for the purpose of off-roading due to the Sway Bar Defect and their inability to withstand water.

### C.     State-Specific Challenges To Certain Warranty Claims (Counts I & II)

Defendant's motion also makes two state-specific challenges to certain warranty claims asserted in Counts I and II.

#### 1.     Pre-Suit Notice As To Named Plaintiff Stirrat

First, Defendant asserts that named Plaintiff "Stirrat does not allege (and did not provide) pre-suit notice" to it of any alleged breach of warranty and, therefore, "[u]nder South Carolina law, this mandates the dismissal of his warranty claims (Counts I, II)" (Def.'s Br. at 15) (citing *Sandviks v. PhD Fitness, LLC*, 2018 WL 1393745 at * 2-3 (D.S.C. 2018)).

In response to this argument, Plaintiffs assert that it is wrong that Stirrat himself has not alleged any pre-notice and asserts:

> "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." S.C. Code Ann. § 36-2-607. Plaintiff Stirrat did precisely that after he "experienced the Sway Bar Defect in 2020. Mr. Stirrat brought his Class Vehicle in for repair while the car was still under warranty, but he was denied warranty coverage." FAC ¶ 17.

(Pls.' Br. at 11). Plaintiffs further allege that Klimushkin, Krohn and Gravense "also gave notice on behalf of all others similarly situated" and argue that is sufficient for Stirrat to have been deemed to have given pre-suit notice. (Pls.' Br. at 11) (citing *Sloan v. Gen. Motors LLC*, 287 F. Supp.3d 840, 885 (N.D. Cal. 2018)).

The Court declines to dismiss Stirrat's claims for lack of sufficient pre-suit notice under South Carolina law.

20

South Carolina Code of Laws Section 36-2-607(3) provides that "the buyer must within a reasonable time after he discovers or should discover any breach notify the seller of [the] breach or be barred from any remedy." Section 36-2-607(3) "does not prescribe any form for the required notification." *United States v. S. Contracting of Charleston, Inc*., 862 F.Supp. 107, 111 (D.S.C. 1994). As such, courts have "developed their own guidelines for determining what constitutes adequate notice." *Id*. "Some courts have held that virtually any complaint about the transaction will satisfy the requirement." *Id*. (citations omitted). Under that lenient standard of notification, "the buyer must merely let the seller know that the transaction is troublesome." *Id*. "Other courts require the buyer to notify the seller that the buyer considers the seller to be legally in breach." *Id*. Because South Carolina courts "have not chosen between the lenient and strict notification standards," the district court in *United States v. S. Contracting of Charleston, Inc*. concluded the lenient standard to the be the better option, in light of the Official Comment to the statute and for policy reasons.

Other courts have also applied the lenient standard in determining what constitutes adequate notice. *See, eg.*, *Cox House Moving, Inc. v. Ford Motor Co.*, 2006 WL 2303182 at * 5 (D. S.C. 2006); *Sloan v. General Motors, LLC*, 287 F.Supp.3d 840, 885 (N.D. Calf. 2018).

Here, Stirrat alleges that after he experienced the alleged sway bar defect, he brought his vehicle in for repair while it was still under warranty, but was denied warranty coverage. (*See* FAC at ¶ 17).

Defendant has not directed the Court any authority to indicate that South Carolina courts have chosen between the lenient and strict standards discussed above. As such, the Court

declines to dismiss the claim at this time because, under the lenient standard, Stirrat has

sufficiently alleged that he provided Defendant with notice of the sway bar problem with his

vehicle.

### 2. Privity

Second, Defendant asserts that the "UCC implied warranty claims (Count II) of Flores,

Klimushkin, Henderson, and Oliver" are "subject to dismissal for lack of privity" because those

named Plaintiffs "did not purchase their vehicles from" Defendant; and "the laws of California,

Nevada, Kentucky, and New York are clear that privity is required in order to state any UCC

implied warranty claim."  (Def.'s Br. at 15). In support of this argument, Defendant directs the

Court to *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *In re FCA US

LLC Monostable Elec. Gearshift Litig.*, 355 F.Supp.3d 582, 595 (E.D. Mich. 2018); *Gould v.

Helen of Troy Ltd.*, 2017 WL 1319810 (S.D. N.Y. 2017); and *Mitchell v. Gen. Motors LLC*, 2014

WL 1319519 (W.D. Ky. 2014).

In response to this challenge, Plaintiffs do not dispute that those four named Plaintiffs did

not purchase their vehicles from Defendant.  But Plaintiffs direct the Court to paragraph 113 of

the FAC wherein they allege:

> 113.   Class Members who purchased new Class Vehicles from FCA-affiliated
> dealerships and Certified Pre-Owned Class Vehicles are the intended
> ultimate consumers of the Class Vehicles, and therefore are third-party
> beneficiaries for the purposes of their implied warranty claims.

(FAC at ¶ 113).  Plaintiffs contend that even where privity is required, there is an exception for

third-party manufacturers and direct the Court to the following authorities:

> That is sufficient because each of these states has an exception for third-party
> manufacturers. *See Matanky*, 370 F. Supp. 3d at 786 ("California Plaintiffs
> sufficiently allege that the third-party beneficiary exception applied to them.")
> and at 788 ("Nevada law does not require vertical privity for a breach of implied
> warranty claim."); *Johnson v. Nissan N. Am., Inc*., 272 F. Supp. 3d 1168, 1180
> (N.D. Cal. 2017) ("Federal courts applying New York law have recognized that
> purchasers of products from dealers or distributors may bring claims for breach of
> implied warranty against manufacturers as third-party beneficiaries."); *Grimes v.
> Modco, Inc*., 2020 WL 1325357, at *3 (W.D. Ky. Mar. 20, 2020) ("An actual and
> direct promise for the benefit of a third party will be sufficient to create privity
> between the promisor and the third party beneficiary.").

(Pls.' Br. at 9).

Here, there is no dispute that these four named Plaintiffs would not satisfy a privity

requirement.  But "Nevada law does not require vertical privity for a breach of implied warranty

claim.*"  See Matanky*, 370 F. Supp.3d at 787.  Thus, the Court declines to dismiss the implied

warranty claim of Klimushkin.

Kentucky appears to require privity (*see Mitchell v. General Motors, LLC*, 2014 WL

1319519 * 7 (W.D. Ky. 2014)) and Plaintiffs have not directed the Court to any on-point

authority establishing otherwise.   As such, the Court shall dismiss the implied warranty claim

brought by Henderson

Although privity is required under California law, an exception applies when a plaintiff is

the intended beneficiary of implied warranties in agreements linking a retailer and a

manufacturer.  *Gant v. Ford Motor Co.,* 2021 WL 364250 at * 5 (E.D. Mich. 2021) (citing

*Matanky, supra*, at 786).  Applying California law, this Court will deny the motion to dismiss the

implied warranty claim brought by Flores because Plaintiffs allege that they purchased their

vehicles from "FCA-affiliated dealerships" and "are the intended ultimate consumers of the

Class Vehicles, and therefore are third-party beneficiaries for the purpose of their implied

23

warranty claims."  (FAC at ¶ 113).  *See Matanky*, 370 F. Supp.3d at 786; *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp.3d 1115, 1128 (C.D. Cal. 2020); *Gant v. Ford Motor Co.*, 2021 WL 364250 at * 5 (E.D. Mich. 2021).

New York also recognizes a third-party exception, "which requires 'a fact-intensive exercise not amenable to resolution at the pleading stage.'" *Gant, supra* (quoting *Francis v. Gen. Motors, LLC*, 2020 WL 7042935 at *9 (E.D. Mich. 2020)).  The Court therefore declines to dismiss the implied warranty claim of Oliver brought under New York law.

## II.   Unjust Enrichment Claims (Count III)

Count III of the FAC asserts a common law unjust enrichment claim on behalf of Plaintiffs.  It states that Plaintiffs bring this claim "in the alternative to other legal claims alleged in the complaint," as permitted under Fed. R. Civ. P. 8.  (FAC at ¶ 118).  This count alleges that:

119.   Plaintiffs and members of the Classes conferred a benefit on FCA by leasing or purchasing the Class Vehicles.  FCA was and should have been reasonably expected to provide Class Vehicles free from the Sway Bar Defect.

120.   FCA unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Sway Bar Defect in the Class Vehicles.  FCA benefitted, at Plaintiffs' expense, when it sold or leased Plaintiffs a vehicle that was inferior to the vehicle Plaintiffs thought they were purchasing, yet the price they paid was the price for a supposedly better functioning vehicle they thought they were purchasing.  Put another way, a benefit was conferred in the form of the inflated purchase price paid for defective and unsafe vehicles that were worth much less.

121.   The unjust enrichment claim is not limited to omissions made at the point of sale.  FCA also unjustly profited at the expense of class members because it knows the Sway Bar Defect is substantially likely to materialize during the useful life of the Class Vehicles, yet refuses to pay for repairs when needed.

122.   As a proximate result of FCA's omissions and concealment of the Sway Bar Defect in the Class Vehicles, and as a result of FCA's ill-gotten gains, benefits and profits, FCA has been unjustly enriched at the expense of Plaintiffs and Class members.  It would be inequitable for FCA to retain its ill-gotten profits without paying the value thereof to Plaintiffs and Class members.

123.   There is a direct relationship between FCA on the one hand, and Plaintiffs and Class members on the other, sufficient to support a claim for unjust enrichment.  FCA failed to disclose the Sway Bar Defect to improve retail sales, which in turn improved wholesale sales.  Conversely, FCA knew that disclosure of the Sway Bar Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of FCA's brand among Plaintiffs and Class members.  FCA also knew its concealment and suppression of the Sway Bar Defect would discourage Plaintiffs and Class members from seeking replacement or repair of the electronic sway bar disconnect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

124.   Plaintiffs and members of the Classes are entitled to restitution in the amount of FCA's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

125.   Plaintiffs and members of the Classes seek an order requiring FCA to disgorge its gains and profits to Plaintiffs and members of the Classes, together with interest, in a manner to be determined by the Court.

(FAC ¶¶ 119-125).

Defendant asserts that the unjust enrichment claims in the FAC should be dismissed for four reasons: 1) no such claim is legally viable where, as here, an express warranty exists which defines the parties' rights and expectations; 2) the claims fail because Plaintiffs do not plead allegations showing their legal remedies are inadequate, which is a threshold requirement for an equitable claim like unjust enrichment; 3) the claim fails because it is predicated on the same alleged conduct as their statutory consumer fraud claims; and 4) the claim fails because Plaintiffs do not sufficiently plead a direct benefit was conferred upon Defendant.

25

**A.      No Direct Benefit**

Defendant's fourth challenge to the unjust enrichment count is that "Plaintiffs admit that they purchased their vehicles from various third party dealerships, meaning that they conveyed no direct benefit on FCA US.  *See, generally*, FAC.  The lack of factual allegations showing such a direct benefit is fatal under Kentucky, New Jersey, New York, and Virginia law."  (Def.'s Br. at 17).

The Court shall address this challenge first because, as Defendant notes in its Reply Brief, Plaintiffs failed to respond to this challenge.  Defendant contends that the claims of Henderson, Gravenese, Krohn, and Oliver must therefore be dismissed and direct the Court to *Garmou v. Kondaur Capital Corp*., 2016 WL 3549356 (E.D. Mich. 2016), wherein the district court granted a motion to dismiss as to arguments made in the motion that the plaintiff failed to respond to stating:

> "It is well understood ... that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Rouse v. Caruso*, No. 06-10961, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011) (quoting *Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)). The court will therefore grant Plaintiff's Motion with respect to these claims.

*Id*.

This Court shall therefore dismiss the unjust enrichment claims of Henderson (KY), Gravenese (NJ), Krohn (VA), and Oliver (NY).  That leaves the Court to analyze the remaining challenges as to Flores (CA), Klimushkin (NV), and Stirrat (SC).

**B.      No Allegations Regarding Inadequacy Of Legal Remedies**

26

Defendant asserts that there are no pleaded allegations in the FAC "showing Plaintiffs' legal remedies to be inadequate" and that "[t]his is a threshold requirement for pleading any equitable claims, and its absence" requires dismissal of Count III.  (Def.'s Br. at 16).

In support of this argument as to Flores's unjust enrichment claim brought under California law, Defendant directs the Court to *Milman v. FCA U.S., LLC*, 2019 WL 3334612 at * 8 (C.D. Cal. 2019) wherein the district court dismissed an unjust enrichment under California law ruling as follows:

> "A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law." *Gomez v. Jelly Belly Candy Co.,* No. 17–00575–CJC(FFM), 2017 WL 8941167, at *1 (C.D. Cal. Aug. 18, 2017) (citations omitted); *see also Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.").
>
> Here, Milman does not argue that her legal remedies are inadequate. *See* Opp'n, Docket No. 45 at 18. Rather, she argues that she can seek equitable relief because she has pled "unjust enrichment" in the alternative. *Id*. However, unjust enrichment is not a stand-alone claim under California law, and even if pled in the alternative, this would not excuse the requirement that Milman plead facts showing no adequate legal remedy exists. *In re Sony PS3 Other OS Litig*., 551 Fed.App'x 916, 923 (9th Cir. 2014); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs., & Prods. Liab. Litig*., No. SAML 10-02172-CJC (RNBx), 2011 WL 13160303, at *5 (C.D. Cal. Jan. 20, 2011) (dismissing unjust enrichment claim both because it is not a separate cause of action and because it "is not available if a plaintiff has an adequate remedy at law.").

*Id.* at *9.

In support of this argument as to Nevada, Defendant relies on *Small v. Univ. Med. Ctr. of S. New*., 2016 WL 4157309 (D. Nev. 2016).  In that case, the district court dismissed an unjust enrichment claim, explaining that "Nevada recognizes the general rule that an equitable claim, like unjust enrichment, is not available where the plaintiff has a full and adequate remedy at law.

27

*In re Wal–Mart Wage & Hour Emp't Prac. Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007) (citing *State v. Second Judicial Dist. Court in & for Washoe Cty.,* 241 P. 317, 322 (Nev. 1925)).”

With respect to this argument being made under South Carolina law, Defendant has not directed the Court to any authority.

In response to Defendant's motion, Plaintiffs do not discuss the above-noted authority as to unjust enrichment claims under California and Nevada law cited by Defendant. Plaintiff do not direct the Court to any authority as to this challenge to unjust enrichment claims brought under California, Nevada, or South Carolina law. Rather, they respond as follows, relying on the restatement and Michigan authority:

> “A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law.” Restatement (Third) of Restitution, § 4(2) (2011); *see also, e.g., Wright v. Genesee Cty.*, 504 Mich. 410, 419-20 (Mich. 2019) (following Restatement and explaining unjust enrichment is 'independent of tort and contract liability.').”

(Pls.' Br. at 12).

The Court rules that the unjust enrichment claim of Flores (brought under California law) and Klimushkin  (brought under Nevada law) are dismissed for failure to plead that their legal remedies are inadequate.

Because neither party has directed the Court to applicable South Carolina law as to this challenge, the Court declines to dismiss Stirrat's unjust enrichment claim on this basis.

**C.    Dismiss Because Claims Based On Same Conduct As Consumer Fraud Claims**

Defendant contends that the "unjust enrichment claims are predicated on the same alleged conduct ('omissions and concealment of the Sway Bar Defect') as their statutory consumer fraud claims.  *See* FAC, ¶ 120, *see also id.* at ¶¶ 144-47 (pp. 53-54).  Thus, their unjust enrichment claims necessarily fail if their statutory claims are dismissed.  *See, e.g., Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed.Appx. 561, 563 (9th Cir. 2008); *Kahn*, 2019 WL 3955386, at *8."  (Def.'s Br. at 16).

Those cases analyze unjust enrichment claims brought under California law.  Neither of those two cases address South Carolina law as to this challenge.  As such, Defendant has not shown that Stirrat's unjust enrichment claim brought under South Carolina law should be dismissed on this basis.

### D.   Existence Of Express Warranty

Finally, Defendant asserts that "no such claim is legally viable where, as here, an express warranty exists which defines the parties' rights and expectations."  (Def.'s Br. at 15-16).  It asserts that "[b]ecause Plaintiffs admit their vehicles were sold with an express warranty (*see* FAC, ¶ 65), their unjust enrichment claims must be dismissed."  (*Id*. at 16).

 In support of this argument as to South Carolina law, Defendant relies on *Coleman v. Bank of Am., N.A.*, 2020 WL 3964808, *6 (D. S.C. 2020).  That case did not involve whether an unjust enrichment claim could be pleaded along with a warranty claim.

In response to this argument, Plaintiffs direct the Court to a decision in this district, wherein the district court ruled that a plaintiff could plead unjust enrichment as an alternative claim for relief where there was a "live dispute over whether the warranty covers the defect, and, if it does not, the unjust enrichment claim could proceed." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F.Supp.3d 218, 228 (E.D. Mich. 2020).  In that case, the challenged unjust enrichment claim was brought under Florida law and "Florida courts have permitted alternative pleading of warrant and unjust enrichment claims particularly where there is a dispute over whether the warranty covers the defect alleged." *Id.*

Here, neither party has directed this Court to any authority that indicates whether or not South Carolina law permits alternative pleading of warranty and unjust enrichment claims.  As such, the Court declines to dismiss Stirrat's unjust enrichment claim under South Carolina law on this basis.

In sum, as to the challenges to the unjust enrichment claims in Count III, the Court shall dismiss all claims, with the exception of Stirrat's unjust enrichment claim brought under South Carolina law.

## III.    Consumer Fraud Statute Claims

The named Plaintiffs assert claims under various consumer fraud statutes enacted in the states where they purchased their respective vehicles.  These claims are based on the same allegations of "fraudulent" representations or "omissions" in connection with the promotion and sale of Plaintiffs' vehicles.

Defendant contends that the particularity requirements of Fed. R. Civ. P. 9(b) apply to Plaintiffs' claims under the CLRA (Count IV), UCL (Count V), NJCFA (Count VII), VCPA (Count VIII), NDTPA (Count IX), and SCUTPA (Count XII).  (*See* Def.'s Br. at 17 n.16). Plaintiffs do not appear to dispute that.  (Pls.' Br. at 14).  Defendant contends that the allegations in the FAC "do not satisfy Fed. R. Civ. P. 8(a) much less the heightened pleading requirements of Rule 9(b)."  (Def.'s Br. at 17).

## A.    No Actionable Misrepresentations Or Omissions Pleaded (Challenge As To All Fraud-Based Counts)

Defendant's motion challenges the fraud-based counts on the ground that no actionable misrepresentations or omissions are sufficiently pleaded in the FAC.

### 1.    Misrepresentation Claims

Defendant's motion challenges the misrepresentation claims included in the fraud counts in two respects.

First, Defendant contends there are no actionable misrepresentations pleaded in the FAC. Defendant asserts that the "only affirmative representations identified in the FAC are generic statements about the vehicles' 'Factory-Warranted Capability,' 'window stickers' and other statements simply listing an electronic sway bar disconnect as being included in the vehicles, and 'interior door stickers' or other materials stating that the vehicles have 'up to 30 inches of water-fording capability.'  *See, e.g., id.* at ¶¶ 30, 38-41, 56-58."  (Def.'s Br. at 17-18).  It asserts that Plaintiffs do not allege that any of those statements are actually false.  (*Id.*) It further contends that "it is beyond debate that the promotional statements pleaded are non-actionable 'puffery.'  (*Id.*).

31

Second, Defendant asserts that "while Plaintiffs (except Gravenese) plead that they 'viewed and relied on the window sticker,' there are no pleaded facts showing that they saw any of the other materials before their purchases, much less that they relief on them in deciding to purchase their vehicles."  (Def.'s Br. at 18).  Defendant asserts that "[t]his lack of reliance and causation is fatal to all of their statutory fraud claims."  (*Id*. at 18).  In support of this challenge, Defendants direct the Court to several cases in its brief, addressing the various statutes.  (Def.'s Br. at 18 n.18).

Plaintiffs assert that Defendant's argument that they fail to allege any affirmative misrepresentations is simply wrong and argue:

> Plaintiffs allege that FCA "expressly warrants to its consumers that the Class Vehicles are capable of fording water up to 30 inches deep."  FAC ¶ 38 (emphasis added).  Defendant makes that representation in its marketing materials as well as in the vehicle manuals and on the interior door stickers.  *Id*. ¶¶ 38-42 (identifying where Defendant made the representations to consumers).  Plaintiffs claim that Defendant's statement is false.  *Id*. ¶ 68 ("Unbeknownst to Plaintiffs and members of the putative classes at the time of purchase the Class Vehicles were defective because they were not capable of managing up to 30 inches of water.").

(Pls.' Br. at 13).  Plaintiffs further argue that Defendant's representation that the vehicles are capable of fording water up to 30 inches deep "is not puffery" because it is a "quantifiable statement of purported fact that implies independent corroboration.  *See Bledsoe v. FCA US LLC*, 378 F. Supp3d 626, 648 (E.D. Mich. 2019) ("when assertions include specific numerical representations, they are more likely to rise above puffery' and imply 'independent corroboration.")."  (Pls.' Br. at 13 n.2).

Plaintiffs do not appear to have responded to Defendant's argument regarding lack of reliance and causation.

In its Reply Brief, Defendant asserts that misrepresentation-based claims fail because "there is nothing in the FAC which supports the notion that their vehicles cannot 'ford[] water up to 30 inches.'" (Def.'s Reply at 5). It further states:

> Giving them the benefit of every doubt, all Plaintiffs aver is that water intrusion may result in a sway bar component malfunction after a vehicle actually "fords" (i.e., passes through) water. See, generally, FAC. Plaintiffs must realize they have no actual allegation of this representation being false as all they reference is an allegation that their vehicles are "not capable of ***managing*** up to 30 inches of water." Pl. Opp., P. 3 (emphasis added). Furthermore, and in any event, Plaintiffs do not allege they saw or relied on any representation about "fording water" in making a purchase decision.

(Def.'s Reply Br. ) (emphasis in original).

In response to the pending motion, Plaintiffs have identified just one alleged misrepresentation made by Defendant – that the Class Vehicles "are capable fording water up 30 inches deep" as alleged in paragraph 38 of the FAC. The word "ford," when used as verb like that, means to cross a body of water by wading. Merriam-Webster Dictionary. But the FAC does not generally allege that the Class Vehicles are not capable of fording water up to 30 inches deep and nowhere in the FAC do any of the named Plaintiffs allege that they (or anyone else) attempted to ford water up to 30 inches with their vehicle but were unable to do so. This Court therefore agrees with Defendant that Plaintiffs have not alleged an actionable misrepresentation made by Defendant in the FAC.

In addition, Plaintiffs did not sufficiently respond to Defendant's argument regarding lack of reliance and causation. And as Defendant stresses in its Reply Brief, none of the named Plaintiffs allege that they saw or relied on any representation about the ability to Ford 30 inches of water in deciding to purchase their vehicle. Such a lack of reliance would also support

dismissal of the misrepresentation-based counts, as set forth by the authority included in Defendant's brief.  (Def.'s Br. at 18 n.18).

For both of these reasons, Plaintiffs cannot proceed with a statutory fraud claim based on an alleged misrepresentation.

## 2. Omissions-Based Claims

Defendant also contends that Plaintiffs have failed to "plausibly plead any omissions-based claim," asserting:

> To state such a claim, Plaintiffs were required to "detail the omissions made, state the person responsible for the failure to speak, provide the context in which the omissions were made, and explain how the omissions deceived [them]." *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, 2013 WL 2285453, *28 (E.D.Mich. 2013). Yet, there are no facts pleaded as to the person(s) responsible for the failure to disclose, or showing the "context of the omissions," such as the circumstances of Plaintiffs' vehicle purchases, who they talked to in the course of making their purchases, or what was said. *See, generally*, FAC. Nor are there facts pleaded showing how any supposed omission misled Plaintiffs, or what FCA US obtained through the alleged fraud. *Id.* Vague and conclusory allegations just like those made by Plaintiffs here have been consistently rejected by this District. *See, e.g., Wozniak v. Ford Motor Co.,* 2019 WL 108845, *3 (E.D. Mich. 2019); *Rosipko*, 2015 WL 8007649 at **3-5; *Gordon v. Home Loan Ctr., LLC,* 2011 WL 1261179, *11 (E.D. Mich. 2011).

(Def.'s Br. at 19).

In response, Plaintiffs contend that they have properly alleged an omissions claim, asserting:

> Plaintiffs repeatedly assert that Defendant failed to disclose the Sway Bar Defect. *Id.* ¶¶ 56-64 ("FCA knew about the Sway Bar Defect before the sale, [and] the various venues the manufacturer used to sell the product failed to disclose the defect."); *see also id.* ¶ 93 ("FCA failed to inform Plaintiffs and Class members that the Class Vehicles contained the Sway Bar Defect."); *id.* ¶ 123 ("FCA failed to disclose the Sway Bar Defect to improve retail sales, which in turn improved

wholesale sales."); *id*. ¶ 134 ("By failing to disclose the Sway Bar Defect, FCA knowingly and intentionally concealed material facts and breached its duty not to do so.").

Defendant exaggerates Plaintiffs' burden under Rule 9(b). This Court has held that "the Sixth Circuit has rejected a strict reading of Rule 9(b)" and the "purpose underlying the requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.*" In re OnStar Contract Litig*., 600 F. Supp. 2d 861, 868 (E.D. Mich. 2009) (Cox, J.) (citations omitted). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.*" Bledsoe,* 378 F. Supp. 3d at 647. "A complaint [alleging an omissions claim] may suffice under the applicable standard if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect." *Wozniak v. Ford Motor Co.,* 2019 WL 108845, at *3 (E.D. Mich. Jan 4, 2019).

Here, Plaintiffs satisfy that standard. *See* FAC ¶¶ 56-64 ("In sum, and as alleged above, FCA knew about the Sway Bar Defect before the sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and Plaintiffs would not have purchased their Class Vehicles or would have paid less for them had they known about the Sway Bar Defect."). Nevertheless, FCA complains that Plaintiffs have failed to describe "the circumstances of [their] vehicle purchases, who they talked to in the course of making their purchases, or what was said." MTD at 19. Defendant, however, fails to explain why that information is necessary to put it on notice as to the nature of Plaintiffs' claims. *See In re Onstar Contract Litig*., 600 F. Supp. 2d at 868 ("OnStar ... can obtain further information regarding Plaintiffs' fraud claims during discovery.")

(Pl.'s Br. at 13-15).

Plaintiffs' response to this challenge, wherein they assert that Defendant was aware of the Sway Bar Defect before the sales, leads into Defendant's next challenge, which carries the day.

In order to proceed with this type of "fraudulent omission claim in the defective product context, a plaintiff must plead, among other things, that 'a manufacturer knew of [the] defect before sale.'" *Hall v. General Motors, LLC*, 2020 WL 1285636 at *3 (E.D. Mich. Mar. 18, 2020)

(quoting *McKee, supra*).  Notably, in *Smith v. Gen. Motors LLC*, __ F.3d __, 2021 WL 631475 (6th Cir. Feb. 5, 2021), the Sixth Circuit recently explained that a "complaint must contain specific facts showing the manufacturer's knowledge of the defect that it allegedly fraudulently concealed.  Mere assertions that a manufacturer's routine testing, along with customer feedback and increased warranty claims, should have alerted it to a dangerous defect are not enough to meet the 12(b)(6) pleading standard."

Defendant contends that Plaintiffs have failed to sufficiently plead such pre-sale knowledge in the FAC.  Plaintiffs do not dispute that they must sufficiently allege such pre-sale knowledge in order to proceed with their fraud and consumer protection act claims, but contend that they have done so.

The FAC includes a section titled, "FCA's Knowledge Of The Sway Bar Defect."  (*See* FAC at 23-29).  Plaintiffs allege that Defendant has known about the Sway Bar Defect since 2005 and further allege:

> 49.     The design of the electronic sway bar disconnect is so obviously ill-conceived that FCA must have anticipated the Sway Bar Defect from the moment it put the feature on the market.  FCA also would have known about the defect through sources not available to Plaintiffs and Class members, including, but not limited to:  pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to FCA's network of dealers and directly to FCA, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to consumer complaints, and repair order and parts data received by FCA from its network of dealers and suppliers.

(FAC at ¶ 49).

Defendant contends that to avoid dismissal of their omissions-based consumer fraud claims, "Plaintiffs need to plead facts showing that FCA US knew about the alleged defect

36

before their respective vehicle purchases (which range from 2013 to 2019)."  (Def.'s Br. at 20).

Defendant notes that Plaintiffs have attempted to meet the requirement by alleging that it knew

of the alleged defect based on : 1) consumer complaints; 2) pre-production testing and data; 3)

warranty data; 4) repair order and parts data; and 5) the availability of replacement components

or manual alternatives from third-party sellers.  Defendant claims these allegations are

insufficient.

As to Gravenese's claim under the NJCFA in Count VII, Defendant asserts that an even

higher standard applies to that claim:

> New Jersey law holds that pre-sale knowledge that a product "might" fail is
> insufficient, and a claim is only cognizable if facts are pleaded showing that the
> manufacturer knew "with certainty" that the plaintiff's particular product would
> fail. *Alban v. BMW of N. Am.*, 2011 WL 900114, *10 (D. N.J. 2011) (emphasis
> added).  There is nothing remotely close to satisfying this standard here.  *See,*
> *generally, FAC.*

(Def.'s Br. at 21).  Plaintiffs did not respond to this challenge specific to the NJCFRA or address

*Alban*.  As such, they are deemed to have conceded that challenge.  *See Garmou, supra.*

As to this general challenge, however, Plaintiffs assert that their allegations about

Defendant's pre-sale knowledge, taken together, are sufficient to state a plausible claim under

the other acts.  (Pls.' Br. at 15-17).  Plaintiffs assert:

> Here, the FAC includes eight paragraphs, seven pages, and several images
> under a header titled "FCA's Knowledge Of The Sway Bar Defect."  FAC ¶¶
> 48-55.  These allegations, taken together, are sufficient for three reasons.  <u>First</u>,
> Plaintiffs allege "the design of the electronic sway bar disconnect is so obviously
> ill-conceived that FCA must have anticipated the Sway Bar Defect," and that
> allegation is supported by facts and images.  *Id*. ¶ 49; *see also id.* ¶¶ 32-37, 43
> (explaining why the design is "stunningly bad" and including images).  FCA does
> not argue those allegations are implausible.  Instead, FCA attacks general

37

allegations included in Paragraph 49, but other courts have held similar allegations supported denial of a motion to dismiss.  *In re FCA*, 280 F. Supp. 3d at 999 (allegations that FCA was aware of defect based "on its own internal testing and design process, and ... customer complaints it received soon after the vehicles entered the market"); *Weidman v. Ford Motor Co.*, 2019 WL 3003693, at *6 (E.D. Mich. July 10, 2019) (allegations of similar to those in ¶ 49 of the FAC supported presale knowledge).

Second, FCA is only half-right when it argues that customer complaints –*standing alone* – are insufficient to support pre-sale knowledge.  However, "customer complaints may support knowledge when they are submitted to a forum the defendant *is likely to view*."  *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016) (emphasis added).  In contrast, customer complaints might not support pre-sale knowledge where, unlike here, the "Plaintiffs [do] not allege[] that Defendant tracked, or was even aware of, complaints posted to the cited third-party websites."  *Granillo v. FCA US LLC*, 2016 WL 94505772, at *9 (D.N.J. Aug. 29, 2016).  The FAC includes allegations about online reputation management ("ORM"), a now widely prevalent business practice, and explains how ORM would have put FCA on notice about customer complaints about the defect many years ago.  FAC ¶¶ 52-54.  Here again, FCA does not address these allegations at all.

Third, FCA argues the allegation in Paragraph 51 about the availability of aftermarket replacements for the sway bar does not support presale knowledge because Jeep is "one of the most customizable vehicles on the market."  Putting aside the fact that FCA relies on matters outside the pleadings (*see* MTD at 21), FCA overlooks Paragraph 50, which alleges that unlike other aftermarket parts, the market for manual disconnect systems "exists mainly because the stock electronic systems are defective."  Paragraph 51 lends factual support for that allegation and supports an inference that FCA must have known about the Sway Bar Defect.

(Pls.' Br. at 16-17) (underlining and italics in original).

As explained below, this Court finds Plaintiffs' allegations of pre-sale knowledge

insufficient to support a reasonable inference that an automotive manufacturer had pre-sale

knowledge of the alleged defect at issue in this case.

Without including any other factual allegations about such testing or data, Plaintiffs

allege that Defendant would have known about the Sway Bar Defect through "pre-production

38

testing, pre-production design failure mode and analysis data, [and] production design failure mode and analysis data." (FAC at ¶ 49). Those "allegations are too vague and pleaded at too high a level of generality" to support a reasonable inference that Defendant had pre-sale knowledge of the Sway Bar Defect, as the district court explained in *Hall*:

> Plaintiffs have not alleged any facts about GM's pre-production testing, any particular analysis GM completed based on that testing, or GM's repair order and parts data that, if proven, would establish GM's pre-sale knowledge of the StabiliTrak Defect. "[C]ourts routinely reject generalized allegations about 'testing' and manufacturer 'analyses,' " like those Plaintiffs lodge here, "made in support of finding knowledge of a defect." *McKee*, 376 F. Supp. 3d at 761-62 (dismissing plaintiffs' fraud claims). *See also Beck v. FCA US LLC*, 273 F. Supp. 3d 735, (E.D. Mich. 2017) (dismissing fraud claim based upon failure to allege pre-suit knowledge of defect, collecting cases, and explaining that "[r]egarding the generic allegations of FCA's access to 'testing' and 'analysis,' courts have found substantially similar allegations to be insufficient to support an inference that a defendant knew about a design defect at the product's time of sale"); *Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (dismissing fraud claims and noting that "Plaintiffs' generalized assertion that unspecified 'pre-release testing data' and 'aggregate data from Honda dealers' fails to suggest how this information could have informed Defendant of the alleged defect at the time of sale"). Simply put, Plaintiffs' allegations about GM's unspecified pre-sale testing and analysis are not sufficient to support a plausible inference that GM had pre-sale knowledge of the StabiliTrak Defect.

*Hall, supra*, at * 3.

Like the plaintiffs in *Smith*, Plaintiffs "make no specific allegations about the results of the tests, such as the data obtained by [FCA] or documents confirming or suggesting whether the defect became known." *Smith, supra*, at * 9.

Plaintiffs also allege that Defendant "would have known about" the Sway Bar Defect through "early consumer complaints made exclusively to FCA's network of dealers and directly to FCA." (FAC at ¶ 49). But there are no factual allegations as to any consumer complaints

having been made to Defendant or its dealers about this alleged defect.  As such, those

allegations are too vague and pleaded at too high a level of generality.

In attempting to show that Defendant was aware of the defect prior to the sales, Plaintiffs

also allege that the "design of the electronic sway bar disconnect is so obviously ill-conceived

that FCA must have anticipated the Sway Bar Defect from the moment it put the feature on the

market."  (FAC at ¶ 23).  Plaintiffs also refer to the design of the electronic sway bar disconnect

as "stunningly bad."  (FAC at ¶ 32).  Plaintiffs have not directed the Court to any cases wherein

such allegations have been deemed sufficient to plead pre-sale knowledge of a defect.  If such

allegations were sufficient, every plaintiff alleging a product to be defective could show pre-sale

knowledge of a defect simply by criticizing the design of the product as being obviously

defective.

As the cases cited by the parties reflect, pre-sale knowledge of a defendant can be

sufficiently pleaded when the complaint includes specific allegations about complaints made to

third parties, such as the National Highway Traffic Safety Administration ("NHTSA"), when the

complaint also alleges that the defendant was aware of those complaints.  For example, *In re*

*FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F.Supp.3d 975, 999-100 (E.D. Mich. 2017),

the pre-sale knowledge allegations were found sufficient where the complaint included

allegations regarding "686 reports of rollaway incidents" where "the vast majority of those

reports" "were received by the defendant and disclosed by it to NHTSA" in a written report.

Here, Plaintiffs do not attempt to establish pre-sale knowledge by virtue of such

allegations.  Rather, Plaintiffs suggest that "[f]or many years, FCA also would have been aware

of customer complaint about the Sway Bar Defect as a result of online reputation management

(or "ORM") efforts."  (FAC 52).  They allege that "ORM is now a standard business practice

40

among most major companies and entails monitoring consumer forums, social media and other

sources on the internet where consumers can review or comment on products," and that the

"growth of the internet and social media, along with the advent of reputation management

companies, has led to ORM becoming an integral part of many companies' marketing efforts."

(*Id*.). Plaintiffs further allege that "[f]or many years, owners have been complaining about the

Sway Bar Defect on Jeep and Ram enthusiast websites like wranglerforum.com or jk-

forum.com." (FAC at ¶ 53). They further allege that "anyone conducting online reputation

management for FCA" could have come across complaints on the internet using google search

terms. (FAC at ¶ 54).

In support of their position that these allegations are sufficient to plead pre-sale

knowledge by Defendant, Plaintiffs direct the Court to *Granillo v. FCA US LLC*, 2016 WL

9405772 (D. N.J. 2016). This Court does not view that case as supporting their position. In

finding the pre-sale knowledge allegations in that case insufficient, the district court noted that

"Plaintiffs have not alleged that Defendant tracked, or was even aware of, complaints posted to

the cited third-party websites." *Id.* at *9. Plaintiffs' brief cites that single sentence but fails to

note that after that line, the district court went on to explain:

> Courts in this district have repeatedly found that consumer complaints on
> third-party websites are not sufficient to infer a manufacturer's knowledge of a
> product defect where there are no allegations that the manufacturer saw such
> complaints. *See Oliver*, 2015 U.S. Dist. LEXIS 169998, at *12 ("[I]mputing
> knowledge of a defect to a manufacturer based upon an internet posting would
> mean that virtually every consumer product company would be subject to fraud
> claims and extensive discovery. All any plaintiff would be required to show is
> that a product broke once and that someone had complained about it on the
> internet.") (internal quotations omitted); *Morris v. BMW of N. Am., LLC*, Civ. No.
> 13-4980 (JLL), 2014 U.S. Dist. LEXIS 24211, at *20 (D.N.J. Feb. 21, 2014);

> *Wiseberg v. Toyota Motor Corp.,* Civ. No. 11-3776 (JLL), 2012 U.S. Dist. LEXIS 45849, at *38 (D.N.J. Mar. 30, 2012) ("While anonymous Internet complaints could be relevant to the issue of knowledge, it must be shown that Toyota was aware of these complaints."); *Rait v. Sears,* Civ. No. 08-2461 (JLL), 2009 U.S. Dist. LEXIS 70217, at *13 (D.N.J. Aug. 10, 2009). For these reasons, the consumer complaints cited by Plaintiffs do not support an inference that Defendant was aware of the Transmission Defect and its symptoms prior to Plaintiffs' purchase of their vehicles.

*Id.*

Here, Plaintiffs do not allege that Defendant was aware of any of the consumer complaints on the third-party websites referenced in the FAC.  Rather, Plaintiffs allege that many companies engage in online reputation management efforts, but do not specially allege that Defendant engages in such efforts.  Plaintiffs then allege that, if Defendant engaged in such efforts, it could have discovered consumer complaints on those third-party websites. This is a bridge too far.

As expressed in *Granillo* , to accept Plaintiffs' position, and impute knowledge of a defect to a manufacturer based on complaints voiced in internet postings on third-party websites, would mean that virtually every manufacturer of a consumer product would be subject to fraud claims.  A plaintiff needs to do more than show that consumers posted a complaint about a product somewhere on the internet.  They need to show that the Defendant was aware of those complaints.  Here, Plaintiffs have not alleged that Defendant was aware of the postings referenced in the FAC.

Plaintiffs also seek to show pre-sale knowledge of the defect by including allegations regarding the availability of aftermarket parts.  Plaintiffs suggest that Defendant "must know" about the Sway Bar Defect because "there has been a small cottage industry of companies

providing aftermarket manual disconnect systems to replace the stock electronic systems" provided by Defendant.  (FAC at ¶ 50).

Defendant contends that "Plaintiffs' attempt to plead knowledge based on the availability of aftermarket parts for the Jeep Wrangler is nonsensical," arguing that it is "common knowledge that after market suppliers sell thousands of replacement components for vehicles, regardless of whether those components are defective."  (Def.'s Br. at 21).

Plaintiffs have not directed the Court to any case wherein allegations regarding the existence of aftermarket parts have been found sufficient to have pleaded pre-sale knowledge on behalf of a defendant manufacturer.

In sum, this Court concludes that the allegations in the FAC do not support a plausible inference that Defendant has pre-sale knowledge of the alleged Sway Bar Defect.  This is fatal as to all of  Plaintiffs' omissions-based fraud claims in the consumer protection act counts.

Thus, the Court shall dismiss all of the consumer protection act counts because no actionable misrepresentations or omissions are sufficiently pleaded in the FAC. [3]

### D.    Class Actions Not Permitted (Counts VIII & XII)

Finally, Defendant seeks dismissal of Counts VIII and XII, asserting that the "VCPA and SCUTPA, by their plain terms, do not permit class actions.  *See, e.g., Fullbright v. Spinnaker Resorts*, 2015 WL 13769381, *1 (D.S.C. 2015) (SCUTPA); *In re Automotive Parts Antitrust Litig.*, 29 F.Supp.3d 982, 1012-13 (E.D. Mich. 2014) (SCUTPA); *Arcand v. Brother Int'l Corp.*,

---

[3]Given this ruling, the Court need not address Defendant's additional challenges to these claims.

43

673 F.Supp.2d 282, 294 (D.N.J. 2009) (VCPA)."  (Def.'s Br. at 23-24).  Defendant contends

that, to the extent that Counts VIII and XII are being pursued on behalf of class, they must be

dismissed.

In response, Plaintiffs do not dispute that the SCUTPA and VCPA their own terms, do

not allow class actions.  Plaintiffs assert, however, that Rule 23 governs the availability of class

action in federal court irrespective of the class action bars in those statutes.  (Pls.' Br. at 22).

Plaintiffs note there is a split of authority on the issue and direct the Court to cases wherein

district courts have accepted their position on this issue.

In its Reply, Defendant directs the Court to *Danielkiewicz*, 426 F.Supp.3d at 437-38, and

*Matanksy*, 370 F.Supp.3d at 798-99, asserting that this district "has repeatedly found that

because class action prohibitions identical to the ones here are substantive, they are not displaced

by Rule 23."  (Reply Br. at 6).

As reflected by the conflicting cases cited by the parties, there is a split of authority on

this issue.  This Court shall follow the approach taken by the district courts in  *Danielkiewicz* and

*Matanky* and rules that Plaintiffs cannot maintain a class action as to the alleged consumer

protection violations in Counts VIII and XII.

## IV.    Challenge To Nationwide Class Allegations

Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) includes, as one of the

issues presented:

> 14.    Should Plaintiffs' claims on behalf of a Nationwide Class be dismissed
> when they do not plead claims under the laws of every state where a
> putative class member resides?

44

(Def.'s Br. at xi). Defendant addresses this issue in the following paragraph in its brief:

> In the event that this Court does not dismiss the Complaint in its entirety, it should nevertheless dismiss the "Nationwide" class allegations. Claims are asserted on behalf of this class for breach of warranty and unjust enrichment (Count I, II, III). *See* FAC, ¶¶ 88, 104, 117. But, Plaintiffs do not plead viable warranty or unjust enrichment claims under the laws of each of the 50 states. See, generally, FAC. Therefore, they "lack [ ] standing to bring claims on behalf of a nationwide class," and those claims must be dismissed. *McKee*, 376 F.Supp.3d at 755-56.

(*Id*. at 25).

In response, Plaintiffs do not address the substance of the standing challenge. Rather, Plaintiffs contend that dismissal of class allegations for lack of standing is premature. Plaintiffs contend that the issue of whether the named Plaintiffs can bring nationwide claims should be addressed at the class certification stage of the case. They direct the Court to several decisions wherein district courts have declined to address such challenges in the context of a motion to dismiss.

Defendant's reply brief asserts that the "notion that standing to pursue a nationwide class should be 'resolved later' has been soundly rejected by this Court and other courts within this District" and direct this Court to *McKee v. Gen. Motors, LLC*, 376 F.Supp.3d 751, 755 (E.D. Mich. 2019); *Wozniak v. Ford Motor Co.,* 2019 WL 108845, *1 (E.D. Mich. 2019); and this Court's decision in *In re Refrigerant Compressors Antitrust Litig.,* 2012 WL 2917365, *7 (E.D. Mich. 2012).

As to this issue – whether a district court should rule a plaintiff lacks standing to bring a nationwide class before a motion for class certification has been filed – there have been

conflicting decisions in this district.  This Court shall follow the approach in *McKee* and address the issue now.

Here, the FAC alleges twelve different counts on behalf of a nationwide class but presents factual allegations on behalf of seven named Plaintiffs.  Those named Plaintiffs reside in California, Michigan, New Jersey, New York, and Texas.  They purchased their vehicles in California, Nevada, Kentucky, Virginia, New York, and South Carolina.  "The class-certification analysis may precede standing analysis when 'the class certification issue [is] 'logically antecedent' to the standing issue."  *McKee,* 376 F. Supp.3d at 755 (citations omitted).  This "logically antecedent" language should be construed in a manner that permits consideration of the standing issue prior to class certification.  *Id.*  As explained in *McKee*:

> Named plaintiffs "who represent a class must allege and show that they personally have been injured not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 657 (E.D. Mich. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 347, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)); *see also Smith*, 2009 WL 514210, at *3 (deciding that because "the plaintiff has not alleged injury in any other state" the plaintiff lacked "standing to bring state law claims arising under the laws" of other states); *see also Wozniak*, 2019 WL 108845, at *1 (determining that the named plaintiffs failed to allege injury in twenty-three states and dismissing the claims for lack of standing).

*Id.*

Like the plaintiffs in *McKee* and the above-cited cases, the named Plaintiffs seek to represent a nationwide class but do not plead viable warranty or unjust enrichment claims under the laws of each of the fifty states. They therefore lack standing to bring claims on behalf of a nationwide class and the nationwide class allegations shall be dismissed.

## CONCLUSION AND ORDER

For the reasons above, IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that the Court DISMISSES: 1) the Breach of Express Warranty claims asserted in Count I; 2) the Breach of Implied Warranty claim of Plaintiff Henderson asserted in Count II; 3) all of the Unjust Enrichment claims asserted in Count III, with the exception of the claim asserted by Plaintiff Stirrat under South Carolina law; 4) the consumer protection act claims asserted in Counts IV, V, VII through XII; and 5) the nationwide class allegations asserted in the FAC, for lack of standing.  The Court also RULES that Plaintiffs cannot maintain a class action as to the consumer protection violations in Counts VIII and XII The motion is DENIED in all other respects.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 24, 2021